UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**DANIELLE R. ANDERSON**,

    Plaintiff,

v.    2:23-cv-975-NPM

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

---

## OPINION AND ORDER

Plaintiff Danielle R. Anderson seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 11),[1] Anderson filed an opening brief (Doc. 16), the Commissioner responded (Doc. 20), and Anderson replied (Doc. 22). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

### I.    Eligibility for Disability Benefits and the Administration's Decision

#### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, non-exertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.     Factual and procedural history

On October 12, 2020, Anderson applied for supplemental security income.[5] (Tr. 349-367). She asserted an alleged onset date of October 12, 2020, alleging disability due to the following: lupus, rheumatoid arthritis, ulcerative colitis, endometriosis, HPV, anxiety, depression, insomnia, chronic migraines, and

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 416.905.

[3] *See* 20 C.F.R. §§ 416.913(a)(2)(i)(A)-(D) (discussing the various categories of work-related abilities), 416.922(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.945(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.994(b)(1)(iv) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 416.911(a).

[5] Anderson also applied for disability insurance benefits, but she agreed to waive the claim as she did not earn enough quarters of coverage to qualify for disability insurance as of the alleged onset date. (Tr. 11, 378).

bronchitis. (Tr. 121, 376-378, 383). As of the alleged onset date, Anderson was 27 years old and had a GED. (Tr. 121, 125). She previously worked as a delivery driver and a Walmart overnight stocker. (Tr. 123-24).

On behalf of the administration, a state agency [6] reviewed and denied Anderson's application initially on April 5, 2021, and upon reconsideration on September 14, 2021. (Tr. 204-09, 217-22, 226-32). At Anderson's request, Administrative Law Judge (ALJ) Mario Silva held a hearing on January 25, 2022, obtained physical and psychological consultative exams, and then conducted a supplemental hearing on September 19, 2022. Anderson was represented by counsel during both hearings. On December 27, 2022, ALJ Silva issued an unfavorable decision finding Anderson not disabled. (Tr. 8-27). Anderson's request for review by the administration's Appeals Council was denied, making the ALJ's decision final. (Tr. 1-4). Anderson then brought the matter to this court, and the case is ripe for judicial review.

## C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an

---

[6] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 416.903(a).

> impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Anderson had not engaged in substantial gainful activity since October 12, 2020, the alleged onset date. (Tr. 14). At step two, the ALJ characterized Anderson's severe impairments as: headaches, lupus, rheumatoid arthritis, endometriosis, anxiety, depression, and obesity. (Tr. 14). At step three, the ALJ determined Anderson did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 15).

As a predicate to step four, the ALJ arrived at the following RFC:

> [Anderson] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand or walk for about one hour at a time and stand for a total of

> four hours in a typical eight hour day, sit for four hours in an eight hour day in increments not to exceed two hours at one time, for a combined total of eight hours per day with normal breaks; occasional climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling; no crouching or crawling; no exposure to extreme cold or heat; no exposure to wetness or humidity, as noted by the DOT; is limited to a noise environment not to exceed SCO level 3, as identified as moderate in the DOT; limited to no more than occasional exposure to hazards such as unprotected moving mechanical parts or unprotected heights; requires a typical lighting environment, as might be found in an office or warehouse; no direct exposure to sunlight; the individual is able to understand, remember, and carry out simple and routine instructions or tasks; the individual is able to make judgments on work-related decisions with simple and routine instructions or tasks in such work environment; the individual is able to respond and adapt to routine work situations and to occasional changes in the work setting without special supervision with simple and routine instructions or tasks; the individual can have up to occasional interaction with the public, supervisors, and coworkers, but they can interact sufficiently to receive daily task assignments and respond to brief status updates; the individual would be unable to perform work that would require directing others, abstract thought, or planning, but requires work involving concrete and tangible things and readily identifiable tasks; the individual is able to maintain concentration, persistence, or pace for two hour blocks, but requires a job that provides for a break normally offered to all employees of 10 to 15 minutes and a standard meal break of about thirty minutes; and the individual must be able to work at a flexible pace, flexible pace is defined as a work environment that is free of fast-paced production work and that is free of fixed time hourly units during the work shift, but with employer set end of the workday productivity goals. (Tr. 18)

Consequently, the ALJ found Anderson could not perform her past relevant work. (Tr. 25). At step five, the ALJ found Anderson could perform other work that exists in significant numbers in the national economy. (Tr. 25). In support, a vocational expert testified (Tr. 95-112) that an individual of Anderson's age, education, work experience, and RFC can perform jobs within the following representative occupations:

- *Office Helper,* DOT #239.567-010, light, SVP 2, with 8,300 jobs nationally;

- *Routing clerk,* DOT #222.587-038, light, SVP 2, with 38,100 jobs nationally;

- *Collator*, DOT #208.685-010, light, SVP 2, with 10,700 jobs nationally.[7]

Thus, for purposes of the Act, the ALJ concluded Anderson was not disabled from October 12, 2020, the alleged onset date, through December 27, 2022, the decision date. (Tr. 26).

## II.  Analysis

Anderson's appeal asks us whether the ALJ properly discounted the opinion of a consultative psychologist.

### A.  Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). The court must account for favorable and unfavorable evidence to a disability finding and view the evidence as a whole. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). But the court's review of the administration's

---

[7] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    The ALJ's decision to discount the consultative psychologist's opinion is supported by substantial evidence.**

None of the state agency's medical consultants found any severe mental impairments. But just before the first ALJ hearing, Anderson's primary care doctor renewed a previously discontinued prescription for an anti-depressant. (Tr. 852,

856). So, her counsel requested a psychological consultative exam, and the ALJ granted it. (Tr. 119-120). Accordingly, licensed psychologist Alexandra Binney, Ph.D., performed a general clinical evaluation with a mental status exam and mental functional capacity assessment. (Tr. 875-881). Among other things, Binney concluded that Anderson had extreme limitations in understanding, remembering, and carrying out complex instructions and making judgments on complex work-related decisions, and marked restrictions in responding appropriately to usual work situations and changes in a routine work setting. (Tr. 879-880). The ALJ found Binney's opinion unpersuasive to the extent it found these marked and extreme limitations. Anderson takes issue with this finding.

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. § 416.920c. No longer is an ALJ to afford deferential weight to the opinions of any particular source, such as a treating physician. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examination and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 416.920c(b)(2). Supportability refers to "the

objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. 20 C.F.R. § 416.920c(c)(1). Consistency requires "the evidence from other medical sources and nonmedical sources" to be consistent with the medical opinion presented. 20 C.F.R. § 416.920c(c)(2). Thus, persuasiveness, rather than weight, matters when assessing a medical opinion. 20 C.F.R. §§ 416.920c, 416.927(c).

When discounting Binney's opinion, the ALJ wrote the following,

> The undersigned is not persuaded by [Binney's assessment of marked and extreme limitations] for several reasons. First, the undersigned notes that the consultative examiner's notes do not support the claimant having any more than a moderate limitation in any of the four areas of broad mental functioning. The examination showed the claimant's speech to be relevant, coherent, logical, and the claimant had adequate attention and concentration, adequate memory, and she had a coherent, logical, and goal-directed thought process. Further, the claimant's intelligence was approximated as being average and she displayed adequate social skills. Second, the claimant's reported activities of daily living to the consultative examiner also do not indicate any more than moderate mental limitations, as the claimant reported her daily routine consisted of caring for her children, doing crafts, cleaning, preparing meals, and addressing medical issues. She also stated she could manage money effectively and that she was able to pay bills and go grocery shopping independently. Third, the claimant's treatment notes do not support any more than a moderate limitation in mental functioning, as she has not required any specialized mental health treatment during the relevant period and treatment notes do not indicate the claimant having any significant cognitive impairment or abnormal behavior (1F/20, 24). Additionally, mental status examination of the claimant by Dr. Bordy[8] was unremarkable (14F/6). Lastly, the undersigned notes that the assessment that the claimant's mental health symptoms appeared to be severely impacting her activities of daily living, vocational performance, and interpersonal interactions was partially based upon the claimant's subjective reports and not on objective examination findings. (Tr. 23-24).

Anderson does not dispute that the ALJ discussed the required regulatory

---

[8] Dr. Pascal Bordy performed a consultative internal medicine examination of Anderson and conducted a mental status examination of Anderson during her appointment.

factors. Rather, she argues the ALJ (1) "failed to appreciate the inherently subjective nature of mental impairments;" (2) "mischaracterized Plaintiff's activities of daily living;" and (3) "relied on [his] own lay opinion for what level of impairment Dr. Binney's findings entailed." (Doc. 16 at 10). None of these arguments establish reversible error.

First, the Commissioner generally requires that work restrictions be supported with objective evidence, such as observable signs of impairment during mental status examinations. *See* 20 C.F.R. §§ 416.902(l) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception...."), 416.920c(c)(1) (supportive "objective medical evidence" is an important factor when evaluating opinions), 416.929(a) (explaining that ALJs will not rely on a claimant's subjective statements alone, but must weigh them against "all of the other evidence," including objective medical signs and laboratory findings). Against that regulatory backdrop, the ALJ was permitted—in fact, required—to consider whether Anderson's symptoms markedly affected her functioning during mental status examinations. *See Dasher v. Kijakazi*, No. 2:22-cv-204-JRK, 2023 WL 5742703, *3-4 (M.D. Fla. Sept. 6, 2023) (rejecting an identical argument that an ALJ "fails to appreciate the inherently subjective nature of mental disorders," when the ALJ weighs a medical source's comparatively mild findings

and other evidence, including the claimant's reported activities, against the claimant's subjective complaints). Here, they did not. *See*, *e.g.*, Tr. 507, 760, 794, 799, 859, 877-878, 887.

Moreover, the ALJ took note of Anderson's subjective accounts about her mental functioning. *See*, *e.g.*, Tr. 17 (recounting her self-reported problems with memory, concentration, understanding, stress, change in routine, and anxiety in public and at social gatherings; and also noting that, by her own account, she gets along "just fine" with authority figures like supervisors, and that she has never been fired or laid off due to any problems getting along with others).[9] When summarizing Anderson's encounter with Binney, the ALJ specifically noted that Anderson "became tearful while discussing her mental health symptoms," and he recounted her subjective report to Binney as follows:

> [T]he claimant reported depression, anxiety, and schizophrenia … were "spiking bad" …. The claimant described her mood as "crappy, I've been sad for the last four days" …. The claimant endorsed recurrent symptoms of depression which began in childhood, mania symptoms that began during adolescence, trauma symptoms, and periods of anxiety. The claimant also maintained experiencing some visual and auditory hallucinations, but that these did not occur as frequently as they had during childhood. (Tr. at 21).

So contrary to the thrust of Anderson's argument, the ALJ put Anderson's subjective reports in the balance. Anderson merely calls into question the ALJ's

---

[9] While the ALJ must *consider* all the evidence presented, including the claimant's subjective reports, the ALJ is not required to *expressly discuss* every item of evidence. *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, *15 (M.D. Fla. Dec. 21, 2021), *R.&R. adopted*, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022).

credibility determinations and the weight he gave to arguably inconsistent pieces of evidence. Neither of which we may second-guess. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021).

As for the reference to activities of daily living in the ALJ's analysis of Binney's opinion, Anderson's argument misses the mark. She erroneously posits that the ALJ pointed to activities of daily living when concluding that Binney's opinions of marked and extreme limitations were inconsistent with the overall record. Then she argues that the ALJ's reasoning was faulty because he did not account for Anderson's hearing testimony. (Doc. 16 at 11-13).

But the ALJ did not reason that Binney's opinions were inconsistent with other evidence about activities of daily living. Rather, the ALJ reasoned that Binney's opinions were not supported by his own records because "the claimant's reported activities of daily living ***to the consultative examiner*** [did] not indicate any more than moderate mental limitations." (Tr. 23) (emphasis added).[10] And the ALJ accurately recounted what Anderson reported to Binney in this regard: "caring for

---

[10] *Cf. Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (affirming an ALJ's finding that the claimant's ability to shop, cook, drive, clean, and visit friends undermined a physician's statement of total mental disability); *Dyer v. Barnhart*, 395 F.3d 1206, 1209 (11th Cir. 2005) (affirming an ALJ's finding that the claimant's allegedly disabling symptoms were inconsistent with his ability to mow the lawn, read, iron, drive, watch television, feed and pet his dog, shop, and do limited household chores); *Pinion v. Comm'r of Soc. Sec. Admin.*, 522 F. App'x 580, 583 (11th Cir. 2013) (observing that activities such as caring for an infant, socializing, and maintaining personal relationships were inconsistent with disabling limitations in concentration and persistence, social interaction, and adaption).

her children doing crafts, cleaning, preparing meals, and addressing medical issues. She also stated she could manage money effectively, and that she was able to pay bills and go grocery shopping independently." (Tr. 23, 876-877).

In short, Anderson misreads a supportability rationale as if it were a consistency argument. Thus, her point of error falters from the start. And to the extent that Anderson points to other evidence in the record that may support her allegations, she improperly flips the burden of proof on its head. Under a substantial evidence standard of review, Anderson must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion. *See Barnes*, 932 F.2d at 1358. This, she has failed to do.

Finally, Anderson suggests that each limitation in the ALJ's RFC must be supported by a corresponding medical opinion because the ALJ is not qualified to resolve conflicts in the medical opinions and other evidence to arrive at an RFC. As the argument goes, since the ALJ was not fully persuaded by either medical sources who found no limitations or medical sources who found fully disabling limitations, the ALJ was left without a proper means to arrive at an RFC. But this essentially ignores the entire regulatory regime. "Indeed, a requirement that an ALJ's RFC determination must be based on a physician's opinion would 'confer upon the physician the authority to determine the RFC, which would abdicate the

Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Donnellan v. Comm'r of Soc. Sec.*, No. 2:22-cv-542-NPM, 2024 WL 1298819, at *5 (M.D. Fla. Mar. 27, 2024) (quoting *Driggers v. Astrue*, No. 1:12-cv-272-LSC, 2012 WL 4478963, at *4 (N.D. Ala. Sept. 20, 2012)).

The case law is replete with holdings rejecting Anderson's "the ALJ cannot play doctor" argument. *See, e.g., Wolff v. Comm'r of Soc. Sec.*, No. 2:22-cv-177-SPC-NPM, 2023 WL 1971935, *6 (M.D. Fla. Jan. 27, 2023) (recognizing that the assessment of a claimant's functional capacity is within the exclusive province of the ALJ), *R&R adopted*, 2023 WL 1967586 (Feb. 13, 2023) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Randolph v. Kijakazi*, No. 8:22-cv-1822-CPT, 2023 WL 6307184, at *4 (M.D. Fla. Sept. 28, 2023) ("An ALJ does not 'play doctor,' however, merely by determining a claimant's RFC based upon his review of the record as a whole. Indeed, the pertinent regulations obligate an ALJ to render such an assessment."); *Dale v. Comm'r of Soc. Sec.*, No. 2:20-cv-521-NPM, 2022 WL 909753, at *7 (M.D. Fla. Mar. 29, 2022) ("[A]n ALJ does not assume the role of a doctor by sorting through the conflicting evidence and making an RFC assessment."). And we will not entertain it here.

- 16 -

## III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision, and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk of court is directed to enter judgment, terminate any pending motions and scheduled events, and close the case.

**ORDERED** on March 28, 2025

_____
NICHOLAS P. MIZELL
United States Magistrate Judge